FILED

Aug 09 2017, 7:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Steven K. Hahn
Mollie E. Briles
Ziemer Stayman Weitzel & Shoulders, L.L.P.
Evansville, Indiana

ATTORNEY FOR APPELLEE

Nathan B. Maudlin
Klezmer Maudlin, P.C.
New Harmony, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Evansville Courier Company, <br> *Appellant-Defendant,* <br><br> v. <br><br> Mary Beth Uziekalla, <br> *Appellee-Plaintiff.* | August 9, 2017 <br><br> Court of Appeals Case No. <br> 93A02-1703-EX-464 <br><br> Appeal from the Indiana Worker's Compensation Board <br><br> The Honorable Linda Peterson Hamilton, Chair <br><br> Application No. <br> C-229777 |

**Mathias, Judge.**

[1]     In this appeal from a decision of the Indiana Worker's Compensation Board ("the Board") in favor of the employee Mary Beth Uziekalla ("Uziekalla"), the employer Evansville Courier Company ("Courier") claims the Board reversibly erred by rejecting one of the parties' stipulations without notice and by admitting Uziekalla's doctor's opinion on the cause of her injury.

We affirm.

## Facts and Procedural Posture

Uziekalla injured her neck while lifting newspapers for Courier in 2008. She was treated by Dr. David Weaver ("Weaver"), a neurosurgeon, and filed a worker's compensation claim on November 17, 2008. That claim was settled by a mediated agreement that was accepted by the Board on December 12, 2011 ("the settlement agreement"). Before the settlement agreement was accepted, Uziekalla received an independent medical examination from Dr. Robert Vraney ("Vraney"), an orthopedic surgeon.

The settlement agreement provided for lump-sum payments to Uziekalla for her permanent partial impairment as rated by Weaver, temporary total disability, and attorney's fees. In exchange, Uziekalla would dismiss her claim and waive further physician review. But the settlement agreement did allow for a claim for change of condition:

> 5. In the event that [Uziekalla] alleges a change of condition or increased [permanent partial impairment rating] within the time period allowed by statute, the parties agree and stipulate that a medical opinion on whether [Uziekalla] suffered a compensable change in condition proximately resulting from the workplace injury of [2008], or has suffered a compensable increased [permanent partial impairment rating] proximately resulting from the workplace injury of [2008], shall be obtained in the following order from:
>
> a) [Vraney]

> b) If either party objects to [Vraney] (which said objection need not be made for cause), then the parties shall confer and select a mutually agreeable medical doctor.
>
> c) If the parties, upon conferral, are unable to select a medical doctor, then [the Board] shall appoint a physician for rendering said medical opinion.

Ex. Vol., Jt. Ex. 1, p. 12 ("the doctor-selection provision").

On May 4, 2015, Uziekalla filed a claim for change of condition, the subject of the instant appeal, alleging that her condition had worsened. Per the doctor-selection provision in the settlement agreement, the parties sought a medical opinion from Vraney on Uziekalla's new claim. When Vraney declined to offer his opinion, the parties agreed to seek the opinion of Dr. Michael Doyle ("Doyle"), a neurosurgeon.

Doyle diagnosed Uziekalla with "a left C7-T1 synovial cyst causing a left C8 radiculopathy" and "a degenerative subluxation of C7 on T1." *Id.* at 16. In Doyle's opinion, it was "highly likely that the synovial cyst and the degenerative subluxation at C7-T1 developed over time as a result of the natural history of progressive degenerative disease and not as [a] result of any work-related injury occurring in 2008." *Id.* But Weaver, who also examined Uziekalla in connection with her new claim, came to a different conclusion: that "the [surgery] done as a result of [Uziekalla's] work injury likely potentiated the development of the cystic lesion." *Id.* at 18. Doyle reviewed Weaver's diagnosis and, taking Weaver's opinion to be that the synovial cyst was "a direct result" of Uziekalla's previous surgery, *id.* at 19, "respectfully disagree[d]" with that

opinion. *Id.* Doyle opined that the "vast majority" of such cysts "occur spontaneously as the result of degenerative disease and are entirely unrelated to injury or prior [surgery]." Doyle added that he was "not aware of any good scientific study which directly links the development of a synovial cyst to [the type of surgery Uziekalla had]." *Id.*

[7] On August 15, 2016, a single hearing member of the Board held a hearing to determine whether Uziekalla had suffered a compensable change of condition. Ahead of the hearing, the parties filed stipulations of fact, including the following relating to the settlement agreement and the doctor-selection provision: "Among other things, the approved settlement agreement contained a procedure for resolving future change of condition claims." *Id.* at 3 ("Stipulation 5"). At the beginning of the hearing, the hearing member admitted the parties' "Joint Exhibit 1," which included their stipulations of fact, as well as Weaver's and Doyle's evaluations of Uziekalla. Tr. pp. 4-5.

[8] The hearing member heard Uziekalla's testimony and the arguments of counsel. As to Uziekalla's reliance on Weaver's opinion rather than Doyle's, Courier argued that Uziekalla "should be bound by the compromise agreement. The intent of the agreement was to set a procedure for expeditiously deciding this issue through one physician." Tr. pp. 21-22. Doyle was the physician selected by the doctor-selection provision; therefore, Courier argued, Uziekalla's claim should stand or fall on his opinion. Courier concluded by asking the Board "to resolve this in [Courier's] favor [by] affirming the selection of [Doyle] pursuant to the agreement and also, if necessary, [by] finding that his

opinion is the better opinion between the two physicians on this very complex medical question dealing with the formation of the cyst." Tr. p. 24. Uziekalla argued that she was not "bound by [the] agreement to accept [Doyle's] opinion" as dispositive of her claim, and that Weaver's opinion was the better one. Tr. pp. 20-21.

[9] The hearing member took the matter under advisement and ruled for Uziekalla on September 28, 2016, finding "Dr. Weaver's opinion to be more persuasive than that of Dr. Doyle" and that Uziekalla had "sustained a change in condition attributable to the prior work injury." Appellant's App. p. 7. The hearing member's order adopted the parties' stipulations in full, including Stipulation 5: that, "[a]mong other things, the approved settlement agreement contained a procedure for resolving future change of condition claims." *Id.* at 5. The full Board affirmed the hearing member's decision on February 1, 2017. This timely appeal followed.

[10] Courier presents two issues for our review: whether the Board reversibly erred by accepting Stipulation 5 and then declining to give Doyle's opinion conclusive effect, and whether the Board reversibly erred by admitting Weaver's opinion.

## Discussion and Decision

### I. The Board Did Not Err As to Stipulation 5

[11] Courier claims the Board reversibly erred when it accepted the parties' stipulation that the settlement agreement "contained a procedure for resolving

future change of condition claims[,]" Ex. Vol., Jt. Ex. 1, p. 3, but then declined to give Doyle's opinion conclusive effect as to the instant change of condition claim, thereby rejecting the stipulation *sub silentio* without notice to the parties. Uziekalla responds that "the parties did not stipulate or agree to be bound by Dr. Doyle's opinion." Appellee's Br. at 6 (initial capitalization omitted). Courier replies that this misses the point: what it seeks is remand for an opportunity to *prove* that that the parties did indeed intend for the medical opinion provided for by the settlement agreement to be exclusive, conclusive, and binding — an opportunity, Courier argues, the Board was bound to afford it once the Board rejected the stipulation so providing.

[12] In general, Courier correctly states the law. The Board may reject the parties' stipulations of fact in whole or in part, but the Board must then allow the parties to present evidence as to any rejected part; the Board cannot accept a stipulation of fact and then find contrary to it. *Thompson v. York Chrysler*, 999 N.E.2d 446, 451 (Ind. Ct. App. 2013); *Duvall v. ICI Americas, Inc.*, 589 N.E.2d 1200, 1202 (Ind. Ct. App. 1992); *Princeton Mining Co. v. Earley*, 114 Ind. App. 343, 51 N.E.2d 382, 383 (1943) (*en banc*).

[13] However, neither Stipulation 5 nor the settlement agreement reasonably bears the construction contended for them by Courier. Stipulation 5 characterizes the doctor-selection provision as "a procedure for resolving future change of condition claims." Ex. Vol., Jt. Ex. 1, p. 3. The use of the indefinite article "a" precludes the construction that the settlement agreement furnished *the* procedure for resolving future change of condition claims — that is, the sole

and exclusive procedure. Indeed, the use of the indefinite article contemplates the contrary: that the doctor-selection provision is one procedure among several, or one component of a larger procedure.

[14] Because parties cannot change the meaning of a contract by stipulation, *Price v. Freeland*, 832 N.E.2d 1036, 1043 (Ind. Ct. App. 2005), the more important question is not what Stipulation 5 says, but what the settlement agreement says. But Stipulation 5 and the settlement agreement are entirely consistent with one another. The agreement says simply, "In the event that [Uziekalla] alleges a change of condition . . . , the parties agree . . . that *a medical opinion* on whether [Uziekalla] suffered a compensable change in condition . . . *shall be obtained*" from a certain doctor. Ex. Vol., Jt. Ex. 1, p. 12 (emphases added). And that is exactly what happened: Uziekalla alleged a change of condition, and a medical opinion from a certain doctor was obtained. The agreement does not so much as hint at the notion that the opinion of the doctor will be the only opinion considered, will be conclusive and dispositive of Uziekalla's claim, or will have any effect whatever on the proceedings. Indeed, Courier tacitly concedes as much on appeal, precisely to the extent that it argues it could prevail only with the help of extrinsic evidence on remand, while remaining entirely silent as to the meaning of the settlement agreement as executed. *See* Appellant's Br. at 13-14, Appellant's Reply Br. at 6.

[15] The settlement agreement is clear and unambiguous on this point. Accordingly, the relief Courier seeks on appeal — remand for an evidentiary hearing on the meaning of the settlement agreement — would be no relief at all. Specifically,

Courier would have no right to present evidence on the construction of a contractual provision that is clear and unambiguous on its face. The parol evidence rule bars admission of such evidence, that is, "extrinsic evidence . . . to add to, vary, or explain the terms of a written instrument [where] the terms of the instrument are clear and unambiguous." *Amici Resources, L.L.C. v. Alan D. Nelson Living Trust*, 49 N.E.3d 1046, 1050 (Ind. Ct. App. 2016).

[16] Finally, we note that Courier never asked the Board for the opportunity to present such evidence as it now asserts it was entitled to. At the August 15, 2016, hearing, Courier asked the hearing member only to find that Uziekalla was "bound by the compromise agreement" and "to resolve this in [Courier's] favor [by] affirming the selection of [Doyle] pursuant to the agreement" and giving his opinion conclusive effect. Tr. pp. 21, 24. Courier never argued that, if the hearing member declined to find that Uziekalla was "bound by the compromise agreement" in the manner it suggested, Tr. p. 21, then Courier should have the opportunity to present evidence as to a rejected stipulation.

[17] The Board did not err with respect to Stipulation 5.

## II. Courier Waived Evidentiary Challenge to Weaver's Opinion

[18] Courier claims the Board reversibly erred in admitting Weaver's opinion because it did not rest on reliable scientific principles and was therefore subject to exclusion under Indiana Evidence Rule 702(b). *See, e.g., Hastings v. State*, 58 N.E.3d 919, 924-26 (Ind. Ct. App. 2016); *O'Banion v. Ford Motor Co.*, 43 N.E.3d 635, 643-645 (Ind. Ct. App. 2015). The hearing member's ruling on the

admissibility of expert testimony under Evidence Rule 702 was a matter within its broad discretion and will be reversed only for abuse of that discretion. *See Estate of Borgwald v. Old Nat'l Bank*, 12 N.E.3d 252, 256 (Ind. Ct. App. 2014).

[19] But failure contemporaneously to object to admission of evidence waives the right on appeal to allege error in its admission. *State Farm Fire & Cas. Co. v. Radcliff*, 987 N.E.2d 121, 153 (Ind. Ct. App. 2013), *trans. denied*. Moreover, invited error is not reversible error. *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005). "Under this doctrine, a party may not take advantage of an error that [it] commits, invites, or which is the natural consequence of [its] own negligence or misconduct." *Id.*

[20] Here, Weaver's opinion was submitted together with Doyle's, and the rest of both parties' evidence, as "Joint Exhibit 1." This exhibit was admitted as tendered by both parties without objection from either at the August 15, 2016, hearing. Tr. pp. 4-5 ("The parties have tendered their Joint Exhibit 1. . . . I will show Joint Exhibit 1 admitted."). At no point before or during the hearing did Courier move or argue for the exclusion of Weaver's opinion. In its closing argument, Courier urged the hearing member only to find that "[Doyle's] opinion *is the better opinion* between the two physicians on this very complex medical question dealing with the formation of the cyst." Tr. p. 24 (emphasis added). Any error in the admission of Weaver's opinion was invited by Courier's own tender of the exhibit containing it or, at minimum, was waived by Courier's failure contemporaneously to object to its admission.

While we have often expressed a preference for adjudication on the merits, enforcing Courier's waiver is the more appropriate course here. Under Evidence Rule 702, "the trial court [or the hearing member] is considered the gatekeeper for expert opinion evidence." *Akey v. Parkview Hosp. Inc.*, 941 N.E.2d 540, 543 (Ind. Ct. App. 2015), *trans. denied*. It is impossible to review whether the hearing member properly performed his gatekeeping role when he was never asked by either party to do so. The scientific reliability of tendered evidence, like most expert-witness problems under Evidence Rule 702, presents precisely the kind of fact- and context-dependent question that cannot be intelligently decided without the record developed by contemporaneous objection. In short, if Courier doubted the scientific reliability of Weaver's opinion, it ought not to have tendered it.

## Conclusion

The Board committed no error as to the parties' Stipulation 5 on the meaning of the doctor-selection provision of the settlement agreement. Courier waived its evidentiary challenge to Weaver's opinion by failing to raise it below. The judgment of the Board is therefore affirmed.

Affirmed.

Kirsch, J., and Altice, J., concur.