## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 17 2017, 8:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEY FOR APPELLEE

Matthew J. McGovern
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David R. Scoggin,

*Appellant-Respondent,*

v.

Melony Scoggin-Sommers,

*Appellee-Petitioner.*

November 17, 2017

Court of Appeals Case No.
31A05-1608-DR-2006

Appeal from the Harrison Circuit Court

The Honorable Larry R. Blanton, Special Judge

Trial Court Cause No.
31C01-1412-DR-278

**Pyle, Judge.**

## Statement of the Case

[1]     David Scoggin ("Husband") appeals the trial court's division of assets pursuant to the dissolution of his marriage to Melony Scoggin-Sommers ("Wife"). On

appeal, he argues that the trial court erred in assessing the marital pot because it omitted certain marital assets and incorrectly valued certain assets. He also argues that the trial court abused its discretion in determining that Wife had rebutted the presumption in favor of an equal division of property. We agree that the trial court erred by failing to include all of the assets in the marital pot and by failing to accurately value all of the assets. We also conclude that the trial court did not abuse its discretion in determining that Wife had rebutted the presumption in favor of an equal division of assets. We remand to the trial court with instructions to include the omitted marital assets with correct valuations in the marital pot. The trial court may then distribute the marital assets in accordance with this amended assessment of the marital pot and its finding that Wife rebutted the presumption in favor of equal division.

[2] We affirm in part, reverse in part, and remand.

## Issues

1. Whether the trial court erred in calculating the marital pot.

2. Whether the trial court abused its discretion when it determined that Wife had rebutted the presumption in favor of an equal distribution of the assets.

## Facts

[3] Husband and Wife were married on May 12, 1990. Twenty-four years later, on December 17, 2014, Wife filed a petition for the dissolution of their marriage. At the time, the parties did not have any minor children.

[4]     On May 8, 2015, the trial court held a preliminary hearing to determine temporary possession of the parties' residence. At the hearing, Wife testified that Husband had removed some of the assets they had kept in a safe at the residence. According to the parties, Husband had invested in precious metals throughout their marriage and had stored the metals in the safe, along with cash, guns, and a coin collection. Wife did not know how much metal or cash had been in the safe or had been removed, but she testified that only the guns and coin collection remained. She also testified that Husband had once told her that there had been "[p]robably 30 to $40,000" of cash in the safe. (Tr. Vol. 2 at 30). Husband admitted that he had "removed some cash" from the safe and said that the cash was "gone" but claimed that the cash had totaled "10 or 15" thousand dollars, not as much as thirty-five thousand dollars. (Tr. Vol. 2 at 23). Despite admitting that he had removed cash from the safe, Husband also claimed that he had not been inside the safe in the previous two years and had "not removed any gold, or any cash, or any silver from the safe since the divorce was filed." (Tr. Vol. 2 at 24). Nevertheless, after the hearing, Husband brought gold and silver worth $40,000 to $45,000 that he had taken from the safe to the parties' lawyers' offices to be inventoried.

[5]     On May 20, 2016, the trial court held a final dissolution hearing to determine how the parties' property should be distributed. Husband and Wife presented evidence at the hearing that they owned the following assets: (1) three 401Ks; (2) three bank accounts, one of which held $150,000 Husband had received in a wrongful death settlement for the death of his father; (3) an Occidental

Petroleum PRA; (4) the marital residence; (5) the cash, precious metals, and coin collection Husband had stored in the safe; (6) a Kentucky farm Husband had inherited; and (7) personal property, including firearms, household goods, furnishings, and personal vehicles.

[6] According to the parties' testimonies, they had built the marital residence in 1995 and lived there since that time. First Harrison Bank ("First Harrison") held a mortgage of $55,000 on the residence. At the parties' request, First Harrison had appraised the property and concluded it was worth $255,000. Wife submitted this appraisal into evidence as Joint Exhibit 3, while Husband submitted, as Joint Exhibit 4, a second appraisal that valued the home at $183,000.

[7] The parties also testified that Husband had inherited a fee simple interest in the Kentucky farm in 2008 when his step-mother died. Since that time, he and Wife had rented the land to a tenant farmer and received income of "between 6 and $16,000" per year from the crops the farmer grew. (Tr. Vol. 2 at 95). Wife testified that Husband had invested half of the income each year in precious metals and that they had used the other half for "repairs and upkeep on the farm," as well as for paying the property taxes on their Indiana residence. (Tr. Vol. 2 at 92). According to the parties, two months before Wife filed the petition for dissolution, she and Husband had signed a quit claim deed conveying the farm to Husband and Husband's son with Wife retaining a life

estate in the farm.[1] Wife submitted a life estate actuarial table as evidence of the value of her life estate, and that table indicated that her interest in the property was worth 77.931% of the property's value. It also indicated that the remainder interest was worth 22.069% of the property's value.

[8] The parties next testified that Husband had received an approximately $150,000 settlement in a wrongful death lawsuit for the death of his father. The lawsuit had lasted for several years, and Husband admitted that Wife had handled most of the communication with their attorneys.

[9] With respect to the parties' personal property, Wife's counsel told the court that "the parties [had] agree[d] to go with the net value of the personal property of $18,446.00" and that such amount "[would] go on [Wife's] side of the ledger." (Tr. Vol. 2 at 112). The court verified this agreement with Husband's counsel, who conceded that Husband had agreed to that arrangement.

[10] As for the valuables that had been in their safe, Husband admitted that he had removed the assets "[a]t some point in time when [he] knew [he] was going to be put out of [his] house." (Tr. Vol. 2 at 54). Wife testified that when she had originally asked Husband where the missing cash and precious metals were, he had told her that he "didn't know what [she] was talking about," even though

---

[1] The trial court explained that Wife had signed the quit claim deed because Kentucky has laws "as it applies to dower and [courtesy]." (Tr. Vol. 2 at 84).

he later "produced some coins" after the May 8 hearing. (Tr. Vol. 2 at 116, 118). Wife estimated that precious metals worth $105,000.00 were still missing.

[11] After the hearing, the trial court entered findings and fact and conclusions of law dissolving the marriage and dividing the parties' property. These findings and conclusions provided, in relevant part:

> 16. . . . [Wife] retained a life estate in the McCracken County, Kentucky farm of 88 acres with an estimated value of [$]149,000.00.
>
> The wife was fifty-seven (57) years of age at the time petition was filed. Wife's exhibit "4" would have the Court determine by actuarial calculations that her present interest in the real estate is Seventy-Seven and 931 thousandths percent (77.931%) of the value of the property[,] that value being One Hundred Sixteen Thousand – One Hundred Seventeen Dollars and 19/100 ($116,117.19).
>
> The Kevil Kentucky Property may be considered as an inheritance to [Husband]. However, as a bargained for consideration, or as a gift[,] [Wife] was given a life estate in that property. There is no question that she has an expectation and a right to be compensated for her vested interest in that realty. [Wife's] rights attached when [Husband] and Thomas Paul Scoggin made the new deed conveyance in October 2014[.]
>
> 17. First Harrison Bank, the mortgage holder on the marital residence, cause[d] an appraisal to be done on the property. First Harrison valued the residence and surrounding curtilage at One Hundred Eighty-Three Thousand Dollars ($183,000.00) (joint exhibit 3). The Court accepts the lien holder[']s evaluation.
>
> \* \* \* \* \*
>
> 29. . . .

The Wife estimated that there was about five (5) pounds of gold, four hundred (400) pounds of silver and one (1) ounce of platinum in the safe, at that time. She valued the precious metals at approximately $150,000.00. She based her calculation on the daily price of precious metal at the time the Petition was filed. There are no pictures and no insurance documents placing a value on this treasure trove.

At the hearing held on May 8, 2015, the Husband testified, **under oath**, that he did not know how much cash he [had] removed from the safe, but "he guessed" about Fifteen Thousand Dollars ($15,000.00). [Husband] gave conflicting testimony concerning the contents of the safe and what may have come of the precious metals and cash. He first admitted to removing about $15,000.00, **then** denied taking anything.

After the unsuccessful mediation held on July 2, 2015, the Husband produced approximately $40,000.00 - $45,000.00 in precious metals[] that he admitted removing from the safe.

The Husband either mis-spoke or presented false testimony on May 8, 2015, when he denied removing any precious metals from [the] safe;

30. The parties have agreed to divide certain items:

    (a) The items that remain in the safe;

    (b) The firearms;

    (c) Household goods and furnishings;

    (d) Each keep the personal vehicle and the debt thereon;

                    *      *      *      *      *

32. [Husband] has been less than forthright in his dealings and somewhat less than truthful in his testimony.

> The Court finds it extremely difficult if not virtually impossible to place a valuation on "ghost assets". That is, property that both parties agree [] may exist but are neither produced nor independently verified as to either the value of or the existence of.
>
> [Husband] by his own obfustication [sic] and dilatory actions has heightened the court's level of distrust;
>
> 33. [Wife] prays the court to deviate for [sic] an equal division of assets and to find the respondent concealed evidence and intentionally misled the Court. The Court recognizes this misbehavior of the respondent and will deviate from the equal division provisions.

(Appellant's App. Vol. 2 at 30-36) (emphasis in original).

[12] The trial court divided the marital pot and awarded Wife assets worth $428,416.74, which it labeled as "Fifty-five Percent" of the total assets. (Appellant's App. Vol. 2 at 40). This list of assets did not include Wife's interest in the Kentucky Farm or any personal property. In later conclusions, the trial court specified:

> 2. The Court concludes that the Wife has a life estate in the Kevil Kentucky Farm, located in McCracken County, the farm has a valuation of $149,000.00. The Husband has a remainder interest in ½ of the farm.
>
> *     *     *     *     *
>
> 4. The Court concludes that because the Wife has rebutted the presumption of the equal division, she shall be entitled sole possession of her life estate in the Kentucky Farm, as well as all of the *rents, revenue and profits generated by the property during the*

*term of her natural life* which would be due [as] payable to
[Husband] as one-half owner of the real estate.

(Appellant's App. Vol. 2 at 40) (emphasis in original). The court awarded
Husband a list of assets worth $347,001.75, which it labeled as "Forty-five
Percent" of the total assets. (Appellant's App. Vol. 2 at 41). The court also
provided that "[t]he Wife and Husband shall receive all property presently in
her/his possession, and/or in her/his name alone, other than what is set aside
separately in this order." (Appellant's App. Vol. 2 at 41). Husband now
appeals.

# Decision

[13]     On appeal, Husband argues that the trial court: (1) erred because it failed to
correctly assess the total of the marital pot; and (2) abused its discretion when it
determined that Wife had rebutted the presumption in favor of an equal
division of property. We will address each of these arguments in turn.

[14]     Preliminarily, however, we note that the trial court entered findings of fact and
conclusions of law in its dissolution order. Where a trial court has made
findings of fact, we apply a two-tiered standard of review. *Quinn v. Quinn*, 62
N.E.3d 1212, 1220 (Ind. Ct. App. 2016). First, we determine whether the
evidence supports the findings, and, second, whether the findings support the
judgment. *Id.* The trial court's findings are controlling unless the record
includes no facts to support them either directly or by inference. *Id.* We set
aside a trial court's judgment only if it is clearly erroneous. *Id.* "'Clear error

occurs where our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made.'" *Id.* (quoting *Maddux v. Maddux*, 40 N.E.3d 971, 974 (Ind. Ct. App. 2015), *reh'g denied*).

### 1. Marital Pot

Husband argues that the trial court erred in valuing the marital pot because it failed to include the proper values for certain assets in the pot and completely omitted certain assets. In particular, he contends that the trial court's findings demonstrate that the court: (1) omitted the stipulated value of the parties' personal property; (2) omitted Wife's life estate in the Kentucky farm; and (3) assigned the incorrect appraisal value to the parties' marital residence.

It is well-settled that, in a dissolution action, all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse in his or her own right, or acquired by their joint efforts. *Quinn*, 62 N.E.3d at 1220; IND. CODE § 31-15-7-4. For purposes of dissolution, "property" means "all the assets of either party or both parties." I.C. § 31-9-2-98. "'The requirement that all marital assets be placed in the marital pot is meant to [e]nsure that the trial court first determines that value *before* endeavoring to divide the property.'" *Quinn*, 62 N.E.3d at 1223 (quoting *Montgomery v. Faust*, 910 N.E.2d 234, 238 (Ind. Ct. App. 2009)) (emphasis added). Indiana's "one-pot" theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award. *Id.* Although the trial court may decide to award a

particular asset solely to one spouse as part of its just and reasonable property division, it must first include the asset in its consideration of the marital estate to be divided. *Id.* The systematic exclusion of any marital asset from the marital pot is erroneous. *Id.*

[17] First, Husband argues that the trial court erred because it failed to include the stipulated value of the parties' personal property in the marital pot and to assign it to Wife's "side of the ledger" as the parties had agreed. (Tr. Vol. 2 at 112). We agree. The trial court did not include the parties' personal property, which they had agreed had a value of $18,446, in the marital pot. We have noted that inclusion of all of the assets in the marital pot is important because it allows the trial court to determine the value of the marital pot before endeavoring to divide it. *Quinn*, 62 N.E.3d at 1223, 1224 (finding that the trial court had erred by failing to include property in the marital pot even though it had mentioned the property elsewhere in its dissolution order). Accordingly, we agree with Husband that the trial court erred by failing to include the personal property, with a stipulated value of $18,446, in the marital pot. Accordingly, we remand with instructions for the trial court to add the personal property to the marital pot.

[18] Wife argues that, even if the trial court erred, Husband should not be allowed to benefit from the error because he invited it. We have previously held that a party "'may not take advantage of an error that [it] commits, invites, or which is the natural consequence of [its] own negligence or misconduct.'" *Evansville Courier Co. v. Uziekalla*, 81 N.E.3d 267, 271 (Ind. Ct. App. 2017) (quoting *Wright*

*v. State*, 828 N.E.2d 904, 907 (Ind. 2005)). Wife claims that Husband's counsel agreed that the personal property was evenly split between the parties and, therefore, told the trial court that it did not need to include the property in the marital pot. In support of this argument, Wife cites statements Husband's counsel made at the hearing to the effect that Husband was keeping a New Holland Tractor worth at least $8,000 and that the property was "a wash both ways." (Tr. Vol. 2 at 113).

[19] However, we interpret Husband's counsel's statements differently based on their context. The following discussion occurred at the hearing:

> [WIFE'S COUNSEL:] And then, Your Honor, in regard to Joint Exhibit 5 – then Joint 5, Your Honor, is – the parties agree to go with the net value of the personal property of $18,446.00. That will go on [Wife'] side of the ledger.
>
> THE COURT: I guess that's by agreement, too?
>
> [HUSBAND'S COUNSEL:] Yes, [S]ir.
>
> [WIFE'S COUNSEL:] Yeah. That cut a half-hour out of –
>
> THE COURT: Well, maybe you guys need to go out and talk some more.
>
> [WIFE'S COUNSEL:] So, anyway, but the intention is for—[Wife]—or [Wife] considers [Husband's] children to be her own, because their mother is deceased and it's her intention to—whatever they want out of that they can have, but for—both sides have problems with the appraisal. So, we think that's the best resolution. And [Wife,] you're under oath[.] [D]o you agree with that?
>
> [WIFE:] I do.

THE COURT: You mean on Joint 5?

[WIFE'S COUNSEL:] Yes, on Joint 5.

THE COURT: So, kids get to come in and pick out anything they want?

[WIFE'S COUNSEL:] Yeah.

[WIFE:] Yes.

THE COURT: What are assorted plyers? Who did this Gordon? [Wife's counsel], that was you.

[WIFE'S COUNSEL:] I had nothing to do with that.

THE COURT: What is a chicken roost?

[WIFE'S COUNSEL:] There's a ten year old $1000.00 recliner in there, Judge where it's for sale.

THE COURT: There you go.

[HUSBAND'S COUNSEL:] But, we got a New Holland tractor in there worth at least $8,000.00, that he puts $13,000.00 on. And Gordon agrees with me on there, *so it's a wash both ways.*

[WIFE'S COUNSEL:] Yeah, we're okay with it, we're just joking.

THE COURT: Well, I'm just messing with you. Go ahead.

(Tr. Vol. 2 at 112-13) (emphasis added).

[20] It appears that Husband's counsel's statement "it's a wash both ways" referred to the appraisal value of the items, not the parties' distribution of the items. (Tr. Vol. 2 at 113). Wife's counsel mentioned that both of the parties had problems with the appraisal and that there was a ten-year-old recliner valued at $1,000,

and then Husband's counsel noted that there was a tractor "worth at least $8,000.00, that he puts $13,000 on." (Tr. Vol. 2 at 113). Within this context, it appears that the attorneys were commenting that some items were undervalued and some overvalued, so it was a "wash both ways," and, therefore, they were okay with the stipulated appraisal of $18,446. (Tr. Vol. 2 at 113). Regardless, Husband did not invite the trial court to exclude the personal property from the marital pot. Consistent with this conclusion, we note that in the memorandum of law supporting the proposed findings of fact and conclusions of law that Husband submitted to the trial court, he concluded that "[t]he Wife should be awarded the marital personal property appraised in the amount of $18,426 [sic]." (Appellee's App. Vol. 2 at 19). Therefore, we are not persuaded that Husband invited the trial court's error.

[21] Next, Husband argues that the trial court erred because it failed to include Wife's life estate in the Kentucky farm in the marital pot. We agree. However, we find two errors in the trial court's valuation of the Kentucky farm. The trial court totaled the "Assets of the Parties" in Finding 31 and listed the Kentucky farm as having a value of $74,500.00. (Appellant's App. Vol. 2 at 35). In support of that value, the trial court cited "(1/2 interest – See Husband's Exhibit "A")". (Appellant's App. Vol. 2 at 35). The trial court did not otherwise list the farm in the parties' assets. This was an error because, as Husband noted, both Husband and Wife had interests in the Kentucky farm. *See Quinn*, 62 N.E.3d at 1223 (stating that Indiana's "one-pot" theory prohibits the exclusion of any asset in which a party has a vested interest from the scope

of the trial court's power to divide and award). In Finding 16, the trial court accepted Wife's evidence that her life estate in the farm was worth 77.931% of the value of the farm, which was equivalent to $116,117.19. The trial court should have included this value in the parties' assets.

[22] However, we also find that the trial court erred in calculating Husband's interest in the farm. Husband and his son were joint tenants with rights of survivorship, but Husband's interest was not equivalent to a half interest in the property, as the trial court concluded, since Wife retained a life estate. Instead, according to the life estate actuarial tables that the trial court accepted, the remainder value of the property was equivalent to only 22.069% of the value of the property. Applied to the farm's $149,000 value, that amount was $32,882.81. Since Husband only had a half interest in this remainder value, his share should have been worth half of $32,882.81—$16,441.405. *See Grathwohl v. Garrity*, 871 N.E.2d 297, 301 (Ind. Ct. App. 2007) ("A joint tenancy relationship confers equivalent legal rights on the tenants that are fixed and vested at the time the joint tenancy is created."). As the trial court must include all assets in the marital pot, it should have included both the value of Wife's interest in the farm ($116,117.19) and the value of Husband's interest in the farm ($16,441.405) in its calculation of the parties' assets. Its valuation of $74,500 was error.[2] On remand, the trial court should remove $74,500 from the

---

[2] Husband also seems to argue that the trial court erred by failing to include the value of Wife's right to rent from the farm in the marital pot. However, a trial court may not divide the future earnings of a party in anticipation that they will be earned. *Berger v. Berger*, 648 N.E.2d 378, 383 (Ind. Ct. App. 1995). In addition,

marital pot and add $116,117.19 for Wife's interest in the Kentucky farm and $16,441.405 for Husband's interest in the Kentucky farm.

[23] Finally, Husband argues that the trial court's determination of the value of the marital residence was erroneous because the trial court indicated that it had "accept[ed]" the lienholder's appraisal of the residence but then listed the incorrect value for that appraisal. (Appellant's App. Vol. 2 at 31). Specifically, in its findings, the trial court found:

> 17. First Harrison Bank, the mortgage holder on the marital residence, cause[d] an appraisal to be done on the property. First Harrison valued the residence and surrounding curtilage at One Hundred Eighty-Three Thousand Dollars ($183,000.00) (joint exhibit 3). The Court accepts the lien holder[']s evaluation.

(Appellant's App. Vol. 2 at 31). Husband notes that according to First Harrison's appraisal of the residence, which was admitted as Joint Exhibit 3, the residence had a fair market value of $255,000, not $183,000. The appraisal of the residence that Husband had commissioned valued the residence at $183,000 and was admitted as Joint Exhibit 4.

[24] We agree with Husband that the trial court made a typographical error as it indicated that it accepted the lien holder's evaluation but then listed the

---

a life estate entitles the holder to the possession of real property, which includes the right to the rents and profits of the real estate. *In re Estate of Stayback*, 38 N.E.3d 705, 712 (Ind. Ct. App. 2015). Accordingly, the actuarial table that valued Wife's life estate already inherently valued her right to the income the property could produce.

incorrect value for the lienholder's appraisal. Wife notes that, later in its findings and conclusions, the trial court listed the residence as having a value of $128,000—equivalent to a fair market value of $183,000 minus the $55,000 mortgage remaining on the house. Beside the $128,0000, the trial court included a notation "see [J]oint Exhibit '4,'" Husband's exhibit appraising the house as having a fair market value of $183,000. (Appellant's App. Vol. 2 at 35). Wife argues that, in this finding, the trial court "corrected" its previous mistake and indicated that it intended to value the residence at a fair market value of $183,000. (Wife's Br. 22). Because the trial court's findings are contradictory, we remand to the trial court with instructions to correct its findings and assign its intended value to the marital residence.

## 2. Rebuttal of Presumption of Equal Distribution

[25] Next, Husband argues that the trial court abused its discretion when it found that Wife had rebutted the presumption in favor of an equal division of marital assets. Although the trial court will amend the total of the marital pot upon remand and may re-distribute the assets accordingly, we are not remanding for the trial court to re-assess its findings completely. Accordingly, any finding that we have not found erroneous will stand, including the trial court's finding that Wife rebutted the presumption in favor of an equal division of assets. Thus, although we are remanding, we will address Husband's challenge to the trial court's finding that Wife rebutted the presumption, which is based upon evidence already in the record.

Our legislature has enacted a statutory presumption that an equal division of marital property is just and reasonable. *See* I.C. § 31-15-7-5. A trial court may deviate from this statutory presumption if a party presents relevant evidence to rebut the presumption. *Id.* Such evidence includes evidence of the following statutory factors:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> > (A) before the marriage; or
> >
> > (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:
>
> > (A) a final division of property; and
> >
> > (B) a final determination of the property rights of the parties.

I.C. § 31-15-7-5.

[27] The division of marital property is highly fact-sensitive and is a task within the sound discretion of the trial court. *Fobar*, 771 N.E.2d at 59. We will reverse only if there is no rational basis for the award—that is, if the result is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. *Luttrell v. Luttrell*, 994 N.E.2d 298, 301 (Ind. Ct. App. 2013), *trans. denied.* We do not reweigh the evidence, and we consider only the evidence favorable to the trial court's decision. *Id.*

[28] Here, the trial court relied on factor (4) of the statute when it found that Wife had rebutted the presumption in favor of an equal property division. Husband appears to argue that the trial court should not have found that Wife rebutted the presumption and should have instead found that he rebutted the presumption. Towards that end, he asserts that he presented evidence that the wrongful death settlement and the Kentucky farm were his inheritance from his parents and should have been awarded solely to him.

[29] Essentially, Husband is asking us to reweigh the evidence of factor (2) of INDIANA CODE § 31-15-7-5—the extent to which the property was acquired through inheritance—against factor (4) of the statute—the conduct of the parties during the marriage as related to the disposition or dissipation of their property. We note that all of the factors listed in INDIANA CODE § 31-15-7-5 are to be considered together, with no one factor alone necessarily proving or requiring an unequal division. *In re Marriage of Marek*, 47 N.E.3d 1283, 1290-91 (Ind. Ct. App. 2016), *trans. denied.* No one factor is entitled to special weight

over any other, and a party's inheritance alone does not necessarily dictate how property should be divided. *Id.* at 1291, 1292. Accordingly, we will not evaluate the evidence of the wrongful death settlement and Kentucky Farm in isolation from the rest of the marital pot and statutory factors.

[30] Here, the trial court found that Husband's concealment of assets, including the precious metals and cash in the safe, supported its determination that Wife had rebutted the presumption in favor of an equal division. Our review of the evidence reveals that there was evidence to support the trial court's finding. Husband admitted at one point that he had removed items from the safe when he knew he was about to be forced to leave the marital residence but said at another point that he had not been inside the safe for two years. When asked at the May 8 hearing which assets he had removed from the safe, Husband said he had removed only $10,000 to $15,000 in cash, yet later produced precious metals worth $40,000 - $45,000. Testimony of the parties' investment practices and receipts introduced at the final dissolution hearing indicated that this was not nearly all of the precious metals Husband had removed, and Wife estimated that precious metals worth $105,000 were still missing. This evidence, in combination with the trial court's assessment that Husband had been "somewhat less than truthful in his testimony," more than adequately supports the trial court's conclusion that factor (4) of INDIANA CODE § 31-15-7-5 warranted an unequal division of property. (Appellant's App. Vol. 2 at 35). We will not reweigh the evidence to evaluate whether evidence of Husband's inheritance was more persuasive. *See Luttrell*, 994 N.E.2d at 301.

In sum, we conclude that the trial court erred by failing to include the personal property and Wife's life estate in the marital pot and by failing to include proper values for Husband's interest in the Kentucky farm and for the marital residence. We remand for the trial court with instructions to include the correct values of the assets in the marital pot as described herein. The trial court may then distribute the marital assets in light of this amended assessment of the marital pot and its finding that Wife rebutted the presumption in favor of equal division.[3]

Affirmed in part, reversed in part, and remanded.

Baker, J, and Mathias, J., concur.

---

[3] Husband also argues that the trial court abused its discretion in distributing the marital assets because, even if Wife rebutted the presumption of an equal division of assets, the trial court should not have awarded such a high percentage of the marital pot to Wife. Because we are remanding to the trial court for a re-evaluation of the marital pot, which might involve a re-evaluation of the percentage of the pot awarded to each party, this issue is not yet ripe for our review. *Ind. Dep't Envtl. Mgmt. v. Chem. Waste Mgmt.*, *Inc.*, 643 N.E.2d 331, 336 (Ind. 1994) ("Ripeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record."). *See Cavollo v. Allied Physicians of Michiana*, *LLC*, 42 N.E.3d 995, 1001 n.3 (Ind. Ct. App. 2015) ("A court may not review an issue that is not ripe."). Therefore, we will not address Husband's argument.